218 N.J. Super. 350 (1987)
527 A.2d 923
GERALD GERSHAW, PLAINTIFF-APPELLANT,
v.
THER-A-PEDIC SLEEP PRODUCTS, INC.; HAROLD WINIKOFF; BENJAMIN WINIKOFF; RICHARD WINIKOFF AND GARY GERSHAW, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1987.
Decided July 1, 1987.
*353 Before Judges GAULKIN, BAIME and ASHBEY.
John P. Palmisano argued the cause for appellant (Andora, Palmisano, Harris & Romano, attorneys; Marchi, Jaffe, Cohen, Crystal, Rosner & Katz, Special Counsel; Ernest Allen Cohen, John P. Palmisano and Jonathan N. Harris, on the brief).
Stephen N. Dratch argued the cause for respondents Ther-A-Pedic Sleep Products, Inc. and Gary Gershaw (Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, P.A., attorneys; Martin L. Greenberg, of counsel).
Donohue & Hughes, attorneys for respondents Harold Winikoff, Benjamin Winikoff and Richard Winikoff (Richard J. Donohue, of counsel).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff Gerald Gershaw (Gershaw) brought this action as a stockholder of defendant Ther-A-Pedic Sleep Products, Inc. (Ther-A-Pedic). His complaint, filed November 15, 1984, asserted a variety of derivative claims on behalf of Ther-A-Pedic against the individual defendants as officers and directors, demanded permission to inspect the corporate records and sought declaratory judgment that Gershaw and other named persons had been duly elected as directors at a September 6, 1984 shareholder's meeting. The parties immediately set into what became a protracted and bitter litigation. Crossclaims, counterclaims, third-party complaints were filed; additional parties were brought in; motions and cross-motions proliferated. The proceedings culminated in a final hearing at which but one witness testified. On August 5, 1986, the trial judge entered judgment, among other things, (1) denying all relief to Gershaw; *354 (2) declaring that Gershaw owns 25% of the Ther-A-Pedic stock; (3) fixing the value of all of the Ther-A-Pedic stock at $1,200,000 and (4) incorporating, by implication, a February 18, 1986 order which authorized the individual defendants to purchase Gershaw's stock. Gershaw appeals.

I.
Gershaw's central contention is that the trial judge was without authority to mandate that he sell his shares to the individual defendants. The order granting that relief recites that it is entered "pursuant to N.J.S.A. 14A:12-7(8)," which provides:
Upon motion of the corporation or a holder or holders of 50 percent or more of the outstanding voting shares of the corporation, before or after the appointment of a custodian or provisional director, the court may order the sale by the plaintiff or plaintiffs of all shares of the corporation's stock held by them to either the corporation or the moving shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.
The court can order a stock sale under that section, however, only in an action "brought under" N.J.S.A. 14A:12-7(1):
The Superior Court, in an action brought under this section, may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock as provided below, or enter a judgment dissolving the corporation, upon proof that
(a) the shareholders of the corporation are so divided in voting power that, for a period which includes the time when two consecutive annual meetings were or should have been held, they have failed to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors; or
(b) the directors of the corporation, or the person or persons having the management authority otherwise in the board, if a provision in the corporation's certificate of incorporation contemplated by subsection 14A:5-21(2) is in effect, are unable to effect action on one or more substantial matters respecting the management of the corporation's affairs; or
(c) in the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly towards one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.
*355 We are satisfied that Gershaw's action was not "brought under" N.J.S.A. 14A:12-7(1) and thus the court had no authority to order the sale of Gershaw's stock under N.J.S.A. 14A:12-7(8).
N.J.S.A. 14A:12-7(1) appears in Chapter 12 of Title 14A, entitled "Dissolution." Its predecessor provided for involuntary dissolution upon a showing of corporate deadlock and an inability "to function normally in the best interests of its creditors and shareholders." The Commissioners' Comment to the 1972 amendment (L. 1973, c. 366, § 67, effective May 1, 1974) noted that the section has been "substantially revised to enlarge the grounds on which an action may be brought and to provide additional remedies." The reason for the changes was described as follows:
The Commission was mindful on the one hand that the principals of a business enterprise, even if profitable, should not be joined irrevocably together if there is substantial dissension among them and, on the other, that dissolution of a business is a drastic remedy to be applied with caution. In addition, the Commission recognized that there is often a public interest involved in avoiding dissolution as a remedy in the event of deadlock or internal dissension.
The design of N.J.S.A. 14A:12-7(1) is thus to provide for involuntary dissolution or, where appropriate, less drastic alternative remedies. Gershaw did not seek to dissolve the corporation nor did he seek relief as an alternative to dissolution; indeed he did not ask the court to intervene at all in the corporate structure or governance. His derivative claims were brought on behalf of the corporation and were subject to N.J.S.A. 14A:3-6. His demand for inspection of corporate records was a personal claim asserted under N.J.S.A. 14A:5-28 and his demand for declaratory judgment (N.J.S.A. 2A:16-50 et seq.) simply sought a determination as to the membership of the board of directors. Nothing in the language or history of N.J.S.A. 14A:12-7(1) suggests that the assertion of such claims can justify the forced sale of the claimant's stock. To treat such claims as being "brought under" the statute would put every minority stockholder in peril of involuntary sale upon the making of any claim at all.
*356 The relief of forced sale under N.J.S.A. 14A:12-7(8) is available to buy out "the plaintiff or plaintiffs" who seek dissolution of the corporation; as an alternative and less drastic form of relief, and upon motion of the corporation or a holder or holders of 50% or more of the outstanding voting shares, "the plaintiff or plaintiffs" can be ordered to sell their stock. Here Gershaw was not such a "plaintiff" and defendants, even if they were properly deemed to hold more than 50% of the outstanding voting stock, had no right to relief under the statute.
Nor did defendants have any such statutory right under their counterclaim, in which they specifically sought dissolution "pursuant to N.J.S.A. 14A:12-7(1)(b) and (c)." As the parties demanding dissolution, defendants were not entitled to demand the involuntary sale of any minority interest. The court is authorized only to order the sale "by the plaintiff or plaintiffs," i.e., the party seeking relief under N.J.S.A. 14A:12-7(1). That reading of the statute is supported by the 1984 Exposure Draft with Revisions and Commissioners' Comments to Title 14A of the New Jersey Business Corporation Act. The proposed amendment to N.J.S.A. 14A:12-7(8) would provide:
Upon motion of the corporation or before or after the appointment of a custodian or provisional director the court may order the sale by any shareholder who is a party to the proceeding of all shares of the corporation's stock held by them to either the corporation or the moving shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.
The proposal removes the requirement that the movant own 50% or more of the outstanding stock and allows the forced sale of stock held by any shareholder to the proceeding. As stated in the Commissioners' Comment to N.J.S.A. 14A:12-7(8),
[t]he revision permits any shareholder who is a party to a proceeding brought pursuant to Section 14A:12-7 to move to purchase, or to have the corporation purchase, shares owned by any other shareholder who is a party to that proceeding. Previously, the statute permitted this to be done only by a shareholder or shareholders owning 50% or more of the stock of the corporation with respect to a shareholder or shareholders who were parties plaintiff in the proceeding.
*357 Since N.J.S.A. 14A:12-7(8) was not amended as proposed, it may only be enforced as written, i.e., to foreclose defendants from being awarded the forced sale of Gershaw's stock as alternative relief to their demand for dissolution.
Defendants further urge, and the trial judge himself suggested at various points, that even in the absence of statutory authority the court had inherent power to order the sale of Gershaw's stock interest. Defendants rely principally on two cases, Meiselman v. Meiselman, 309 N.C. 279, 307 S.E.2d 551 (1983) and Orchard v. Covelli, 590 F. Supp. 1548 (W.D.Pa. 1984), aff'd 802 F.2d 448 (3d Cir.1986). Those cases fail to support defendants' argument, and in fact confute it.
In Meiselman, a minority stockholder sought liquidation of a group of family corporations. His demand for relief was based upon a statutory provision which, the North Carolina Supreme Court noted, was similar to N.J.S.A. 14A:12-7(1). 307 S.E.2d at 560. The North Carolina statute authorized relief "other than dissolution," including the purchase of the shares of "any shareholder." Id. 307 S.E.2d, at 564. In remanding the matter for a determination as to whether and what relief plaintiff might be entitled to, the court characterized both the North Carolina and New Jersey statutes as evidencing a "growing trend toward enactment of more liberal grounds under which dissolution will be granted to a complaining shareholder. ..." Id. 307 S.E.2d at 560 (emphasis supplied).
In Orchard, the trial judge ordered the sale of plaintiff's minority stock interest without any apparent statutory authorization. 590 F. Supp. at 1560. But plaintiff had requested dissolution and receivership, which the court found "to be inappropriate and deleterious" because plaintiff "can be adequately protected without the need for so drastic a remedy." Id. at 1559. The order that defendants purchase plaintiff's stock at fair value was thus a less drastic alternative to the remedy which plaintiff himself had sought.
*358 There is not the slightest suggestion in either Meiselman or Orchard that under the common law a court can divest the stock interest of a complaining minority stockholder who seeks neither dissolution nor any alternative relief. Moreover, both cases suggest that the relief of an ordered sale is available, both under statutes and the common law, solely in aid of a minority stockholder and as an alternative to dissolution.
The order directing Gershaw to sell his stock cannot be sustained as an appropriate exercise of the inherent power of the equity court. No showing has been made of corporate deadlock or inability to take necessary corporate action, nor has Gershaw asked for the court to dissolve the corporation or intervene in its operation. Gershaw has asserted claims as a stockholder and on behalf of the corporation. We find neither reason nor authority to strip him of his stock because he has done so.

II.
After he entered the February 18, 1986 order mandating the sale of Gershaw's stock, the trial judge directed that at the final hearing Gershaw's proofs of the alleged corporate mismanagement and waste would be considered solely as bearing on the value of the stock. Gershaw presented only one witness at the final hearing, defendant Harold Winikoff. The ensuing final judgment dismissed all of Gershaw's claims, but the judge's oral opinion does not appear to address the corporate mismanagement or waste issues which were the core of Gershaw's complaint.
Our review of the record thoroughly persuades us that the trial judge's erroneous determination to order the sale of Gershaw's stock rendered the final hearing meaningless. Gershaw clearly did not have an opportunity to present proofs in support of his claims, since the trial judge had totally restructured the litigation over Gershaw's objections. Gershaw had been ordered to give up his stock ownership; he cannot be *359 faulted for not litigating vigorously in support of a money judgment which he strenuously resisted. Thus it would be most inappropriate to regard the meager proofs Gershaw presented on valuation to be dispositive of his affirmative claims. Gershaw must be given a full and fair opportunity to present his proofs in support of the causes of action he asserts.
The erroneous February 18, 1986 order also infects the trial judge's disposition of Gershaw's claim of a preemptive right to acquire a proportionate share of the stock offered for sale by the Winikoff defendants. The judge found that the Winikoffs offered their stock for sale after the October 23, 1985 date fixed for valuing Gershaw's stock; he held that Gershaw could claim no preemptive right to acquire that stock because his interest as a stockholder was effectively liquidated on the valuation date. Since we have held that Gershaw was not properly divested of his stock interest, the trial court must now address and resolve his claim of preemptive rights.
The trial judge also failed to properly address and resolve the issue raised as to the extent of Gershaw's stock ownership. Gershaw did not introduce that issue, for the allocation of stock ownership was irrelevant to the causes of action set forth in his complaint. The question was first raised by the trial judge in anticipation of what he forecast would be a necessary "divorce" of the disputants. So far as we can tell from the very diffuse record before us, the disputes concerning stock ownership were never distinctly framed. At oral argument we were told that, based upon a variety of documents and transactions, Gershaw now claims to own, or to have a right to acquire or to vote, as much as 62% of the Ther-A-Pedic stock. The record does not disclose how or on what basis the trial judge rejected Gershaw's stock ownership claims. It is clear, however, that the disputed factual questions were not the subject of any evidentiary hearing. Given that state of the record, the trial judge's determination that Gershaw owns 25% of the outstanding stock cannot be sustained.

*360 III.
We have described the major errors of omission and commission in the trial court proceedings and judgment. Those errors require that the judgment be reversed and the case remanded for further proceedings. The proceedings on remand, however, are not to be limited to the matters we have discussed. We are persuaded that the errors we have identified, and the faulty trial court proceedings which produced them, taint all of the interlocutory and final determinations made by the trial judge. Accordingly, we are constrained to order that on the remand the trial court shall permit all parties to reframe their pleadings and shall thereupon proceed de novo.
Reversed and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.