260 N.J. Super. 432 (1992)
616 A.2d 1314
PETER G. BOSTOCK, PLAINTIFF/APPELLANT/CROSS-RESPONDENT,
v.
HIGH TECH ELEVATOR INDUSTRIES, INC., A NEW JERSEY BUSINESS CORPORATION, AND KENNETH R. RICE, INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER AND DIRECTOR OF HIGH TECH ELEVATOR INDUSTRIES, INC., DEFENDANTS/RESPONDENTS/CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1992.
Decided November 25, 1992.
*435 Before Judges MICHELS and BAIME.
Jon C. Martin argued the cause for appellant/cross-respondent (Fox, Rothschild, O'Brien & Frankel, attorneys; Jonathan D. Weiner, of counsel; Mr. Martin and Edith S. Brower, on the brief).
Vincent E. Gentile argued the cause for respondents/cross-appellants (Cohen, Shapiro, Polisher, Shiekman and Cohen, attorneys; Mr. Gentile and Judith L. Rosenthal, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
In this appeal and cross-appeal, the parties challenge various aspects of a judgment entered by the Chancery Division, ordering defendant High Tech Elevator Industries, Inc. (High Tech) to purchase the stock of its minority shareholder Peter G. Bostock at a price of $109,518. The Chancery Division determined the value of the stock in accordance with a formula provided in a buy-out clause contained in a shareholders' agreement which had been entered into by Bostock and Kenneth R. Rice, the majority stockholder. In valuing the stock, the Chancery Division judge rejected portions of an appraisal prepared by a court appointed expert mutually agreed upon by the parties. In the principal appeal, Bostock contends that he was not afforded a reasonable opportunity to present evidence supporting the value of the stock set by the independent appraiser. He also contends that the judge erred in her conclusion regarding the sale price of the stock. In the cross-appeal, High Tech and Rice contend the judge lacked the authority to force them to purchase Bostock's shares. They further assert that the judge improperly refashioned the valuation formula contained *436 in the shareholders' agreement. We find no basis to disturb the Chancery Division's judgment.

I.
High Tech was founded by Rice in 1985. Bostock began rendering advice and assistance to Rice shortly after the corporation was formed. In June 1988, Bostock and Rice executed a shareholders' agreement which spelled out the rights of the parties. Bostock was permitted to purchase 45% of the shares of the corporation for $675, while Rice retained the remaining 55% of the stock.
The agreement defined three events which would trigger the sale or purchase of the shareholders' stock. Under Articles 4 and 5, the corporation or the remaining shareholder was obliged to purchase the stock of the other upon his death or disability. In contrast to these mandatory sale and purchase provisions, Article 3 governed "friendly" and voluntary acquisitions of a stockholder's shares. This provision gave the corporation the first option to buy all or part of the shares and, if the corporation refused, then gave the remaining shareholder the right to buy all unpurchased shares.
The purchase price was to be determined by the provisions of Article 6 and the procedures for purchase by those of Article 7. Article 6 provided that the shareholders would execute a certificate of value on a periodic basis to determine share price. In the event that no certificate of value had been prepared prior to 18 months before the valuation date, the corporation's "regular independent accountant" would fix the value of the shares which would bind the parties. More specifically, the clause reads as follows:
If no Certificate of Value is executed prior to eighteen (18) months before the valuation date, then the value per share of Stock of the Corporation for the purposes of determining the purchase price pursuant to paragraphs 3, 4, and 5 of this Agreement shall be the last Certificate of Value price per share, plus or minus such share's proportionate part of any increase or decrease in the net worth of the Corporation measured from the end of the last fiscal year of the *437 Corporation immediately preceding the last executed Certificate of Value to the end of the last full fiscal year of the Corporation immediately preceding the valuation date. The increase or decrease in net worth of Corporation shall be determined by the independent accountant or firm of accountants then regularly engaged in the audit of the books of the Corporation, and in accordance with generally accepted accounting principles and, when so determined shall be binding upon all parties hereto....
We need not describe the acrimonious disputes that ultimately culminated in this litigation. Suffice it to say that, although the corporation prospered, the business and personal relationship between Bostock and Rice rapidly deteriorated. Bostock was suspended from his employment after he insulted Rice's wife, who was employed by the corporation as a secretary. Rice terminated Bostock's employment when he refused to return to work after the two week suspension. Bostock then offered to sell his shares or, alternatively, to purchase Rice's stock. When Rice refused this offer, Bostock commenced this action, claiming, among other things, that Rice had acted oppressively.
In the course of the litigation, High Tech's regularly retained accountant, Peter A. McGuigan, prepared an appraisal in which he determined that the value of the company was $250,655, and that Bostock's 45% interest, taking into account his minority shareholder position, was worth $90,239. Bostock retained his own expert who reported the value of his shares at between $261,000 and $272,000.
It is important to note the parties' respective positions in the Chancery Division regarding the applicability of the buy-out clause in the shareholders' agreement. Bostock contended that the "asset/liability" formula contained in the agreement was inapplicable. He asserted that the majority had acted in an oppressive fashion under N.J.S.A. 14A:12-7(1)(c) and that the court was to determine the "fair value" of his interest in accordance with N.J.S.A. 14A:12-7(8)(a). Conversely, High Tech and Rice urged that the shareholders' agreement was fully applicable. While repeatedly noting that the buy-out provision contained in the shareholders' agreement gave the *438 corporation and remaining shareholder the right of first refusal, High Tech and Rice urged the court to "order Bostock to sell his shares to Rice at the price fixed by the parties themselves."
Following the close of the evidence, the Chancery Division judge rendered an oral opinion in which she found that neither High Tech nor Rice had acted in an oppressive fashion. The judge determined that Rice's conduct was justified by the events and that Bostock's arrogant attempt to gain control over the business was the principal cause of the dispute. While finding no statutory basis for judicial intervention under N.J.S.A. 14A:12-7(1)(a), (b), or (c), the judge nevertheless decided to compel High Tech to purchase Bostock's minority interest. She arrived at that conclusion for two reasons. First, the judge determined that N.J.S.A. 14A:12-7(8) empowered the court to compel a majority shareholder to purchase the shares of a dissident minority even where no "triggering" event was found under N.J.S.A. 14A:12-7(1)(a), (b), or (c). The fact that Bostock had not proven "oppression" under N.J.S.A. 14A:12-7(1)(c) was said not to be a bar to a forced purchase of the minority's interest. Second, the judge found the buy-out clause contained in the shareholders' agreement constituted an independent basis for ordering the purchase of Bostock's stock. In either case, whether based on the statute or on the shareholders' agreement, the judge determined that the formula contained in Article 6 was to control in valuing Bostock's stock. However, the judge was dissatisfied with the appraisal prepared by McGuigan because it did not include a valuation of High Tech's good will. The judge thus appointed an expert agreed upon by all parties and directed him to prepare an appraisal utilizing the "asset/liability" approach provided by Article 6 of the shareholders' agreement.
The parties agreed upon Jeffrey Pinkham as the independent appraiser. Pinkham issued his report on October 2, 1990, valuing Bostock's shares at $193,000. Bostock then filed a motion returnable on July 26, 1991, to enter judgment based upon Pinkham's appraisal. Rice and High Tech took Pinkham's *439 deposition on July 19, 1991, and on the same day filed a letter-brief objecting to his valuation on the ground that it did not conform with generally accepted accounting principles. Specifically, they claimed that Pinkham used an unreasonably low 20% capitalization rate and relied upon minuscule salaries for Bostock and Rice for the years 1986 and 1987. They asserted that generally accepted appraisal procedures required the use of reasonable salaries for corporate officers in determining the value of the business entity. In support of this contention, defendants presented a certification prepared by McGuigan in which he recommended that the appraisal be discounted to reflect reasonable salaries of corporate principals rather than the amounts of compensation actually taken by Bostock and Rice. Bostock submitted no evidence supporting Pinkham's appraisal. Nor did he seek an adjournment of the return date of his motion, but instead was content to rely upon Pinkham's report.
The parties appeared before the Chancery Division judge on July 26, 1991. In rendering her decision, the judge emphasized that she previously told both attorneys Pinkham's appraisal was not to be considered sacrosanct. The judge found that Pinkham had deviated from customary accounting principles by failing to utilize reasonable corporate salaries in valuing High Tech. In that respect, the judge determined that Pinkham had not compared the actual salaries paid to Bostock and Rice in 1986 and 1987 ($5,400 and $25,210 respectively) to salaries within the industry, nor had he adjusted for their de minimus nature. The judge observed that Pinkham reduced the actual salaries paid to Bostock and Rice in 1988 by some $53,000 because industry standards deemed $100,000 to be reasonable officer compensation. The effect of this inconsistency on the valuation was dramatic, converting 1986 and 1987, the first two years of High Tech's existence, into minimally positive net income, rather than years of loss.
The judge then directed the parties to recalculate the appraisal to reflect reasonable corporate salaries rather than the *440 compensation actually taken by Bostock and Rice. It was only after the judge's decision that Bostock's attorney asked to have his own expert review the salary figures suggested by McGuigan in his certification. The judge denied Bostock's request and accepted the recalculated appraisal, which reflected reasonable corporate salaries, in assessing the value of the corporation. Based upon that appraisal, Bostock's 45% interest in High Tech was valued at $109,518.
Before addressing the issues raised by this appeal, we note the parties have reversed the positions they urged in the Chancery Division. Claiming majority oppression under N.J.S.A. 14A:12-7(1)(c), Bostock initially requested the Chancery Division to utilize the "fair value" approach of N.J.S.A. 14A:12-7(8)(a) in appraising his interest in High Tech. High Tech and Rice originally claimed that the shareholders' agreement was applicable and asked the court to order Bostock to sell his shares pursuant to Article 3 at a price fixed by Article 6. On appeal, Bostock contends the shareholders' agreement applied and that the Chancery Division erred by refusing to accept Pinkham's appraisal which, he asserts, conformed with the "asset/liability" approach provided by Article 6. Paradoxically, High Tech and Rice now claim the shareholders' agreement does not require them to purchase Bostock's shares and that Article 6 of the shareholders' agreement is inapplicable because it pertains solely to "friendly" acquisitions and not a "forced" purchase.

II.
We first consider several of the issues raised by the cross-appeal. We agree with the Chancery Division judge's conclusion that the shareholders' agreement controlled and provided an appropriate basis for valuing Bostock's minority interest. In affirming the Chancery Division's judgment, we rely solely *441 on the shareholders' agreement and not on the statutory basis for the judge's determination.
N.J.S.A. 14A:12-7(1) provides in pertinent part as follows:
(1) The Superior Court, in an action brought under this section, may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock as provided below, or enter a judgment dissolving the corporation, upon proof that
(a) The shareholders of the corporation are so divided in voting power that, for a period which includes the time when two consecutive annual meetings were or should have been held, they have failed to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors; or
(b) The directors of the corporation, or the persons having the management authority otherwise in the board, if a provision in the corporation's certificate of incorporation contemplated by subsection 14A:5-21(2) is in effect, are unable to effect action on one or more substantial matters respecting the management of the corporation's affairs; or
(c) In the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.
The remaining sections and subsections of this statute authorize the appointment of a custodian or provisional director and delineate his or her powers. See N.J.S.A. 14A:12-7(2) through -7(6). In addition, N.J.S.A. 14A:12-7(8) empowers a court to order the purchase or sale of a shareholder's stock. As amended in 1988, this section reads as follows:
(8) Upon motion of the corporation or any shareholder who is a party to the proceeding, the court may order the sale of all shares of the corporation's stock held by any other shareholder who is a party to the proceeding to either the corporation or the moving shareholder or shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.
(a) The purchase price of any shares so sold shall be their fair value as of the date of the commencement of the action or such earlier or later date deemed equitable by the court, plus or minus any adjustments deemed equitable by the court if the action was brought in whole or in part under paragraph 14A:12-7(1)(c).
(b) Within five days after the entry of any such order, the corporation shall provide each selling shareholder with the information it is required to provide a dissenting shareholder under section 14A:11-6, and within 10 days after entry *442 of the order the purchasing party shall make a written offer to purchase at a price deemed by the purchasing party to be the fair value of the shares.
(c) If the parties are unable to agree on fair value within 40 days of entry of the order, the court shall make the determination of the fair value, and the provisions of sections 14A:11-8 through 14A:11-11 shall be followed insofar as they are applicable.
(d) Interest may be allowed at the rate and from the date determined by the court to be equitable, and if the court finds that the refusal of the shareholder to accept any offer of payment was arbitrary, vexatious, or otherwise not in good faith, no interest shall be allowed. If the court finds that the action was maintainable under paragraph 14A:12-7(1)(c), the court in its discretion may award to the selling shareholder or shareholders reasonable fees and expenses of counsel and of any experts, including accountants, employed by them.
(e) The purchase price shall be paid by the delivery of cash, notes, or other property, or any combination thereof within 30 days after the court has determined the fair value of the shares. The court shall, in its discretion, determine the method of payment of the purchase price. Whenever practicable, the purchase price shall be paid entirely in cash. If the court determines that an all cash payment is not practicable, it shall determine the amount of the cash payment, the kind and amount of any property, whether any note shall be secured, and other appropriate terms, including the interest rate of any note.
(f) Upon entry of an order for the sale of shares under this subsection, and provided the corporation or the moving shareholders post a bond in adequate amount with sufficient sureties or otherwise satisfy the court that the full purchase price of the shares, plus whatever additional costs, expenses, and fees as may be awarded, will be paid when due and payable, the selling shareholders shall no longer have any rights or status as shareholders, officers or directors, except the right to receive the fair value of their shares plus whatever other amounts as may be awarded. In such event, the court may remove any custodian or provisional director who may have been appointed.
Against this backdrop, we question the thesis, apparently adopted by the Chancery Division judge, that a purchase or sale may be ordered under N.J.S.A. 14A:12-7(8) in the absence of one of the "triggering" events set forth in N.J.S.A. 14A:12-7(1)(a), (b) or (c). The statutory language indicates that the court can order a stock sale under N.J.S.A. 14A:12-7(8) only upon proof that (1) the shareholders are so divided they have been unable to elect successors to directors whose terms have expired, N.J.S.A. 14A:12-7(1)(a), or (2) the directors are unable to effect action on significant corporate matters, N.J.S.A. 14A:12-7(1)(b), or (3) in corporations having 25 or less shareholders, the majority has acted unfairly or oppressively to the minority, N.J.S.A. 14A:12-7(1)(c). It has been said that "under *443 some of the circumstances enumerated in N.J.S.A. 14A:12-7(1)(c), our courts of equity, independent of statutory authority, [have] appoint[ed] a receiver and cause[d] the dissolution of a corporation." Final Report of the Corporation Law Revision Commission, State of New Jersey, Senate No. 1063, at 115 (1972). See In re Collins-Doan Co., 3 N.J. 382, 393, 70 A.2d 159 (1949); Roach v. Margulies, 42 N.J. Super. 243, 245, 126 A.2d 45 (App.Div. 1956); Freidus v. Kaufman, 35 N.J. Super. 601, 612, 114 A.2d 751 (Ch.Div.), aff'd o.b., 36 N.J. Super. 321, 115 A.2d 592 (App.Div. 1955). However, this drastic action has occurred only where there has been "a gross abuse of trust, dissention among the members of the board of directors, or the absence of a properly constituted board of directors." Friedus v. Kaufman, 35 N.J. Super. at 612, 114 A.2d 751; see also Dorf v. Hill Bus Co., 140 N.J. Eq. 444, 54 A.2d 761 (E. & A. 1947); Gillies v. Pappas Brothers, 138 N.J. Eq. 202, 47 A.2d 424 (Ch. 1946); Morse v. Metropolitan Steamship Co., 87 N.J. Eq. 217, 100 A. 219 (Ch.), aff'd, 88 N.J. Eq. 325, 102 A. 524 (E. & A. 1917). These circumstances now form the grounds for judicial action under N.J.S.A. 14A:12-7(1)(a), (b), and (c). As the statute is presently written, a "court can order a stock sale under [N.J.S.A. 14A:12-7(8)] only in an action `brought under' N.J.S.A. 14A:12-7(1)." Gershaw v. Ther-A-Pedic Sleep Prod., 218 N.J. Super. 350, 354, 527 A.2d 923 (App.Div. 1987).
In reaching this conclusion, we recognize the important public policy considerations which impel protection of the interests of minority shareholders. The acute vulnerability of minority shareholders in a closely-held corporation stems principally from three factors. Orchard v. Covelli, 590 F. Supp. 1548, 1557 (W.D.Pa. 1984), dismissed, 791 F.2d 920 (3d Cir.1986). First, based upon its voting power, "the majority is able to dictate to the minority the manner in which the corporation is run." Ibid. Second, a minority interest in a closed corporation is difficult to value because the shares are not publicly traded and a fair market is often not available. Dissention within a closed corporation makes the minority interest even more undesirable *444 and unattractive. As a consequence, a shareholder challenging the majority in a closed corporation finds himself on the horns of a dilemma; he can neither profitably leave nor safely stay with the corporation. "In reality, the only prospective buyer turns out to be the majority shareholder." Ibid. Thus, the limited market for the sale of a minority interest makes the minority particularly vulnerable to manipulation and oppression. A third factor is that a closed corporation frequently originates in the context of personal relationships. Ibid. Often such business entities are formed by family members or friends. Once the personal relationship between shareholders is destroyed, the viability of the business entity generally deteriorates.
Because of these factors, the law "imposes a fiduciary duty upon the majority requiring it to act with utmost good faith and loyalty in transacting corporate affairs." Ibid. However, where no overreaching or unfairness has occurred, the minority shareholders should not be permitted to destroy the corporation and terminate operation of its business. To compel dissolution of a corporation or a buy-out by the majority on the whim of the minority does not comport with common sense. The integrity of the minority's investment is protected by our rules against corporate waste and majority oppression. Absent oppressive or unfair conduct by the majority, we discern no basis, independent of statutory authority, to compel a buy-out of the minority's interest. In our view, the statute empowers a court to order a sale of stock only when a factual predicate of corporate deadlock or majority oppression is proven.
We note in passing another problem with the Chancery Division's reliance on N.J.S.A. 14A:12-7(8). Read literally, that section permits a shareholder to force another stockholder to sell his stock to the movant or the corporation. There is no corollary provision permitting a dissenting shareholder to force another shareholder or the corporation to buy the dissenter's shares. Prior to its amendment, N.J.S.A. 14A:12-7(8) provided:

*445 Upon motion of the corporation or a holder or holders of 50 percent or more of the outstanding voting shares of the corporation, before or after the appointment of a custodian or provisional director, the court may order the sale by the plaintiff or plaintiffs of all shares of the corporation's stock held by them to either the corporation or the moving shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.
In Gershaw v. Ther-A-Pedic Sleep Prod., we held that the statute as then written authorized a court "only to order the sale `by the plaintiff or plaintiffs,' i.e., the party seeking relief under N.J.S.A. 14A:12-7(1)." 218 N.J. Super. at 356, 527 A.2d 923. Concerned with this limitation, the Corporation Law Revision Commission had proposed an amendment which provided:
Upon motion of the corporation or before or after the appointment of a custodian or provisional director the court may order the sale by any shareholder who is a party to the proceeding of all shares of the corporation's stock held by them to either the corporation or the moving shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.
See Corporation Law Revision Commission, Exposure Draft, Title 14A New Jersey Business Corporation Act: Revisions and Commissioners' Comments, at 194 (1984). The proposal eliminated the requirement that a movant own 50% or more of the outstanding stock and allowed the forced sale of stock held by any shareholder to the proceeding. However, the Legislature did not enact the proposed amendment. Instead, the section was amended to read, "[u]pon motion of ... any shareholder who is a party to the proceeding, the court may order the sale of all shares of the corporation's stock held by any other shareholder who is a party to the proceeding to either the corporation or the moving shareholder." (emphasis added). N.J.S.A. 14A:12-7(8). In its current form, a dissenting shareholder may compel another stockholder to sell his stock to him or to the corporation. It does not expressly authorize a court to force another shareholder or the corporation to buy the minority's shares.
One other problem should be noted before we leave the subject. If N.J.S.A. 14A:12-7(8) were to apply, the judge would *446 be obliged to determine the "fair value" of the stock under N.J.S.A. 14A:12-7(8)(a). As we pointed out in Hughes v. Sego Int'l Ltd., 192 N.J. Super. 60, 469 A.2d 74 (App.Div. 1983), the formula set forth in the shareholders' agreement would not be binding. Id. at 68, 469 A.2d 74. Although the judge "could make adjustments to the fair value to reflect the equities of the case and in so doing could appropriately consider the shareholders' agreement[,] this power could be exercised only after the court or parties determined the fair value of the shares." Id. at 68-69, 469 A.2d 74; see also Bowen v. Bowen, 96 N.J. 36, 46-47, 473 A.2d 73 (1984).
For these reasons, we conclude that the Chancery Division judge erred when she relied upon N.J.S.A. 14A:12-7(8) in compelling High Tech to purchase Bostock's shares. We nevertheless agree with the judge's alternative conclusion that the shareholders' agreement was controlling. Under the buy-out provision contained in the agreement, High Tech had a first option on Bostock's shares. In contrast to the mandatory buy-out provision applicable in the case of a shareholder's death or disability, neither High Tech nor Rice was obliged to purchase Bostock's shares under Article 3 of the agreement. Based upon our examination of the record, however, we find that High Tech exercised its option and elected to buy Bostock's interest. We previously quoted Rice's statement contained in the brief submitted by himself and High Tech in the Chancery Division. It bears repeating that they urged the Chancery Division to "order Bostock to sell his shares to Rice at the price fixed" by the shareholders' agreement. The plain import of this statement and others made to the Chancery Division judge was that High Tech or Rice or both wished to purchase Bostock's interest in accordance with the terms of the agreement. The judge accepted this representation and acted upon it. Defendants cannot beseech and request the trial court to take a certain course of action and later condemn the very procedure they invited. Cf. State v. Pontery, 19 N.J. 457, 471, 117 A.2d 473 (1955). We thus hold that High Tech and Rice exercised their *447 option to purchase Bostock's shares by reason of the position they adopted in the Chancery Division.

III.
The remaining issues relate to the valuation of Bostock's stock. Bostock contends that he was not afforded an opportunity to support Pinkham's appraisal and attack the certification submitted by McGuigan. He also asserts the Chancery Division judge erroneously discounted Pinkham's valuation by hypothecating reasonable corporate salaries for corporate principals although only nominal compensation was actually taken. In addition, Bostock claims that he is entitled to back pay if the value of the corporation is reduced by the reasonable salaries he and Rice could have taken. Finally, he argues that the 1990 and 1991 fiscal years should have been included in the valuation and that he should be paid prejudgment interest. Although all of these issues were raised in Bostock's motion for reconsideration, the only argument advanced at trial pertained to the Chancery Division judge's refusal to permit Bostock to have his own expert challenge the reduction of Pinkham's valuation. We conclude that Bostock's motion for reconsideration was properly denied because it raised issues and theories never presented at trial. Having not properly raised these points in the Chancery Division, Bostock is precluded from advancing them on appeal. Skripek v. Bergamo, 200 N.J. Super. 620, 629, 491 A.2d 1336 (App.Div.), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985).
We find no merit in Bostock's claim that he was denied a fair opportunity to challenge McGuigan's thesis concerning the hypothecation of reasonable corporate salaries in valuing High Tech's stock. As we pointed out in our description of the facts, the Chancery Division judge made it plain from the outset that her appointment of an independent appraiser was not intended to be wholly dispositive of the valuation issue. In appointing the independent appraiser, the judge repeatedly cautioned the *448 parties the valuation was subject to review if it were not performed in accordance with generally accepted accounting standards. Although the judge did not expressly say she would allow submissions challenging Pinkham's appraisal, this was implicit in her admonitions that she was not bound by his valuation. We note that defendants felt free to probe the assumptions underlying Pinkham's report in the deposition taken in response to Bostock's motion to enter judgment on the appraisal. Bostock did not interpose an objection to the depositions and freely participated in the cross-examination of Pinkham. Moreover, Bostock never objected to defendants' submission of McGuigan's certification or defendants' letter-brief challenging Pinkham's report. Instead, Bostock's counsel sat idly by and did nothing until after the judge rendered her opinion in which she found inadequacies in Pinkham's appraisal. It was after the judge indicated her intention to require a recalculation of the value of High Tech's stock hypothecating reasonable corporate salaries that Bostock sought to present additional evidence on the subject. We find no abuse of the judge's discretion in denying Bostock's belated and unparticularized oral request to submit additional expert testimony.
On the record before us, we cannot fairly say the judge's findings and conclusions were unreasonable or otherwise unsupported by the evidence. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). The judge's decision follows United States Treasury Department standards for valuing closely-held businesses, which provide that "reasonable" management compensation figures be used. See Rev. Rul. 68-609, I.R.B. 1968-48. Valuation treatises uniformly adopt this same principle. See Petersen, "A Guide to Valuing the Closely Held Business," 22 The Practical Accountant, 35, 42 (1989); Williams, "Valuation of Closely Held Corporations," 110 Trusts and Estates 184, 187 (1971). We thus find no sound basis to disturb the conclusion reached by the Chancery Division judge.
*449 Finally, we reject defendants' argument raised in their cross-appeal that the judge should not have applied the "asset/liability" formula set forth in the shareholders' agreement because no certificates of value had ever been executed. The judge properly refashioned the formula to comport with the parties' expressed intent. We find no error in this respect.
Affirmed.