695 A.2d 330

JOSEPH L. MUSCARELLE, JR., PLAINTIFF–APPELLANT, v. GREGORY J. CASTANO, ESQ., AS ADMINISTRATOR C.T.A. OF THE ESTATE OF JOSEPH L. MUSCARELLE AND ATTORNEY-IN-FACT FOR BROOKVIEW ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP IN LIQUIDATION, CAROLYN M. INFANTE, AND MARLENE M. FLANAGAN, DEFENDANTS–RESPONDENTS, AND MARGARET MUSCARELLE, DEFENDANT–CROSS–APPELLANT.

GREGORY J. CASTANO, ESQ., AS ADMINISTRATOR C.T.A. OF THE ESTATE OF JOSEPH L. MUSCARELLE AND ATTORNEY–IN–FACT FOR BROOKVIEW ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP IN LIQUIDATION, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. NEW YORK LIFE INSURANCE COMPANY, A NEW YORK CORPORATION, THIRD–PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 29, 1997—Decided June 23, 1997.

Before Judges SHEBELL, BAIME, and BRAITHWAITE.

*Frank Holahan* argued the cause for appellant (*Harwood Lloyd,* attorneys; *Mr. Holahan,* of counsel and on the brief; *David M. Repetto,* on the brief).

*John J. DeLaney, Jr.* argued the cause for cross-appellant (*Cooper, Rose & English,* attorneys); cross-appellant relies on the brief of appellant.

*E. Neal Zimmermann* argued the cause for respondent Gregory J. Castano (*Waters, McPherson, McNeill,* attorneys; *Mr. Zim-*

*mermann,* of counsel and on the brief; *Matthew Malfa,* on the brief).

Respondent Marlene M. Flanagan relies on the brief of respondent Gregory J. Castano.

Respondents Carolyn M. Infante and New York Life Insurance Company did not file papers.

The opinion of the court was delivered by

BAIME, J.A.D.

At issue in this appeal is the power of the Chancery Division to appoint a receiver in order to protect the interests of a minority partner in the dissolution of a partnership and the winding up of its affairs. The question is presented in the context of an attempt by plaintiff Joseph Muscarelle, Jr., who holds with his mother a majority interest in the partnership, to purchase partnership property over the vigorous objection of a minority partner, defendant Carolyn Infante, who wishes to have the property sold to a third party, the Ferolie Group (Ferolie). The Chancery Division appointed Gregory Castano to serve as receiver for the partnership and ordered plaintiff and Ferolie to submit final bids. Although plaintiff's bid was lower than that submitted by Ferolie, it contained a footnote in which he agreed to increase his offer to an amount $10,000 above that of Ferolie. The Chancery Division disregarded the footnote and ordered that the property be sold to Ferolie. Plaintiff appeals. We affirm the Chancery Division's order.

## I.

Joseph Muscarelle, Sr., deceased, was the general partner of Brookview Associates L.L.P. (Brookview), a partnership formed under the New Jersey Uniform Limited Partnership Act (ULPA) in 1978. Brookview's limited partners included Margaret Muscarelle, wife of decedent, and the couple's three children, plaintiff, Marlene Flanagan and Carolyn Infante. Joseph Muscarelle, Sr.

and each limited partner held a twenty percent interest in the partnership. Brookview's assets included a 45,000 square foot building in Montvale, New Jersey which was leased to Sony Corporation.

Joseph Muscarelle, Sr. died on April 9, 1989. Following his death, Muscarelle's children and widow all resigned as executors of the estate, leaving the Chancery Division to appoint Gregory Castano as Substituted Administrator C.T.A. Castano distributed decedent's twenty percent interest in Brookview to decedent's wife, Margaret. As a result, Margaret held a forty percent interest in Brookview with her children each maintaining a twenty percent interest.

The Brookview partnership agreement provided that "[s]hould the general partner die, . . . the partnership shall be expeditiously terminated, but there shall not be an immediate dissolution of the partnership, the partnership being temporarily continued by the remaining partners solely for the purpose of winding up the partnership affairs and liquidating the partnership. . . ." Muscarelle's widow and children disagreed concerning the conduct of Brookview's affairs. Consequently, on March 6, 1992, the partners each signed a Partnership Liquidation Plan and Power of Attorney, appointing Castano as attorney-in-fact for Brookview. As per the agreement Castano could be terminated by the votes representing a sixty percent majority interest.

In 1994, plaintiff offered to buy his sisters' and mother's interests in the Montvale property. Unable to come to any agreement, plaintiff filed a complaint in the Chancery Division in February 1995, naming as defendants his mother and sisters as well as Castano as Administrator C.T.A. and attorney-in-fact, and seeking to compel the conveyance of the defendants' interests to him. Carolyn filed a cross-claim objecting to the proposed sale to the plaintiff and offering to purchase the property. Castano filed a counterclaim against plaintiff and a cross-claim against Margaret, Marlene and Carolyn. Specifically, Castano requested distribution of the Montvale property to the partners creating a tenancy

in common.  He also sought an immediate partition of the property, and a private auction of the asset among the partners.  Carolyn abandoned her efforts to purchase the property when Ferolie made an offer in October 1995.  She authorized Castano to negotiate with Ferolie whose offer was nearly $500,000 greater than that of plaintiff.

In November 1995, plaintiff wrote to Castano noting his disapproval of the Ferolie offer.  He offered to purchase his sisters' and mother's interests at the same price as that offered by Ferolie.  Plaintiff then raised his offer and filed a motion seeking an order directing Castano or the partners to sell him the Montvale property at the increased amount.  Castano filed an objection, recommending that the motion be adjourned because Ferolie's offer was firm and plaintiff's was somewhat indefinite.  In the alternative, Castano recommended the denial of plaintiff's motion.  Castano reasoned that 1) inherent difficulties existed in ordering a sale of portions of partnership interests absent a partition, 2) the Ferolie offer was an excellent opportunity to avoid the partition issues and sell the property at arm's length to a third party, and 3) the family had difficulty working together and the resulting acrimony could impede the sale of the property at its highest price.  At this point, Ferolie increased his offer by $100,000 to $4,000,000.  In the context of these fast-moving events, the Chancery Division judge adjourned the motion and ordered the three siblings to meet and attempt to negotiate.  He also directed plaintiff and Ferolie to submit final, sealed bids to the court in order to insure expeditious disposition of the property.  The written order provided in pertinent part:

> Joseph L. Muscarelle, Jr. and Gregory J. Castano (on behalf of the "Ferolie Group") shall finalize their respective best offers to purchase the subject property of Brookview Associates in the form of written contracts not later than 5:00 p.m. on Friday, December 29, 1995 for the purpose of presenting to the Court and all parties such offers.

The three siblings could not agree on a sale to plaintiff.  Plaintiff's and Ferolie's bids were submitted to the court on December

29, 1995.   Plaintiff's offer was for $4,010,000.   However, he includ-
ed a footnote in his bid which read:

> The Building Sale Price of $4,010,000.00 is subject to an upward adjustment as
> follows.   In the event that the Purchase Price offered by the "Ferolie Group" is
> equal to or greater than $4,010,000.00, the Buyer herein agrees to increase his
> Building Sale Price to an amount which is $10,000.00 greater than the "Ferolie
> Group"'s offer.   Accordingly, the Purchase Price of [total sum due to selling
> partners] set forth herein is subject to a proportionate increase in an amount which
> will be calculated in accordance with the formula set forth in paragraph 2 hereof.

The Ferolie Group offered $4,260,000.

On the day after the bids were filed with the court, plaintiff and
Margaret, now representing a sixty percent interest in the part-
nership, terminated Castano as attorney-in-fact for Brookview.
Carolyn's counsel then wrote to the court requesting Castano be
appointed as receiver for the partnership.

Meanwhile, Sony advised Castano of its intention to vacate and
sublet the premises.   It proposed Ferolie as its subtenant.   Sony
submitted the sublease for approval pursuant to the terms of the
lease.   Castano requested an order authorizing him to consent to
the proposed sublease.   Plaintiff filed a motion seeking to dismiss
Castano as a party.

The Chancery Division approved the sale of the Montvale
property to Ferolie, finding that its offer was greater than that
submitted by the plaintiff's bid.   In reaching this result, the court
disregarded the footnote in plaintiff's bid, because it did not
comply with the "letter" and "spirit" of its prior order.   The court
also approved the sublease.   Under the Chancery Division's order,
Castano is to continue to serve as receiver in order to wind up the
affairs of the partnership.

## II.

We first address plaintiff's contention that the Chancery Divi-
sion unnecessarily intruded into the internal affairs of the partner-
ship.   Stripped to its essentials, plaintiff's argument is that he and
his mother held a sixty percent interest in the partnership and
thus had the right to choose to whom the partnership property

was to be sold. The underlying thesis is that the Chancery Division improperly catapulted the interest of the minority partner over that of the majority.

We question that thesis. The Uniform Limited Partnership Act of 1976 (*N.J.S.A.* 42:2A–1 to –73) provides that the partnership agreement may grant to all or a specified group of the limited and general partners the right to vote on partnership affairs. *See* *N.J.S.A.* 42:2A–26, –34. We thus look to the partnership agreement to determine whether there is any provision dealing precisely with the question of voting rights in connection with the sale of partnership real estate. Paragraph seven of the agreement states that the general partner may sell partnership-owned land "[w]ith the consent of two-thirds of the ownership interest of all the general and limited partners. . . ." Against this backdrop, plaintiff and his mother held a sixty percent interest in the partnership, and not a sixty-seven percent interest as the agreement requires. While the partnership agreement does not specifically say whether paragraph seven survives dissolution and is applicable to winding up the affairs of the partnership, we discern nothing to indicate that it does not.

Beyond this, we know of no statute or judicial decision that bars the Chancery Division from taking appropriate steps to protect the interest of a minority partner. It is axiomatic that the relationship of co-partners is "one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Stark v. Reingold,* 18 *N.J.* 251, 261, 113 *A.*2d 679 (1955) (quoting *Bowne v. Windsor,* 106 *N.J. Eq.* 415, 416, 151 *A.* 124 (Ch.1930), *aff'd,* 108 *N.J. Eq.* 274, 154 *A.* 768 (E. & A.1931)). Partners owe to one another "the duty of the finest loyalty." *Id.* at 261, 113 *A.*2d 679 (quoting *Meinhard v. Salmon,* 249 *N.Y.* 458, 463–64, 164 *N.E.* 545, 546 (1928)). Many business methods "permissible in [the] workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties." *Ibid.* A partner's duty to his counterpart is stricter than the morals of the market place. "Not honesty alone, but the punctilio of an honor the most

sensitive, is then the standard of behavior." *Ibid.* This time-tested principle is unbending and inveterate, and "continues with undiminished vitality." *Silverstein v. Last,* 156 *N.J.Super.* 145, 152, 383 *A.*2d 718 (App.Div.1978).

The partners are not relieved of their fiduciary obligation when the partnership dissolves. The partners' mutual obligation to act with the utmost good faith "remains until the relationship is terminated and partnership affairs are wound up" and all assets are distributed or liquidated. *Heller v. Hartz Mountain. Indus., Inc.,* 270 *N.J.Super.* 143, 151, 636 *A.*2d 599 (Law Div.1993).

In recent times, our decisions have focused upon the rights of oppressed minority shareholders in closed corporations. *Bostock v. High Tech Elevator Indus., Inc.,* 260 *N.J.Super.* 432, 443–44, 616 *A.*2d 1314 (App.Div.1992); *see also Muellenberg v. Bikon Corp.,* 143 *N.J.* 168, 179, 669 *A.*2d 1382 (1996); *Brenner v. Berkowitz,* 134 *N.J.* 488, 505, 634 *A.*2d 1019 (1993). Noting the acute vulnerability of minority shareholders in closely held corporations, the Supreme Court has broadly defined oppressive conduct as "that which frustrates the reasonable expectations of the minority shareholder." *Muellenberg v. Bikon Corp.;* 143 *N.J.* at 179, 669 *A.*2d 1382. "The limited market for the sale of a minority interest makes the minority particularly vulnerable to manipulation and oppression." *Bostock v. High Tech Elevator Indus., Inc.,* 260 *N.J.Super.* at 444, 616 *A.*2d 1314.

Many of these policy considerations are equally applicable to the interests of minority partners. While mere disagreement or discord between partners is not adequate for judicial intervention, the Chancery Division may, and should, take appropriate measures where the actions of the majority threaten to wholly frustrate the legitimate expectations of the minority. Although there is no express statutory provision allowing the appointment of a receiver under the ULPA, the Chancery Division in *Silverman v. Kolker,* 149 *N.J.Super.* 162, 373 *A.*2d 442 (Ch.Div. 1977) recognized that a court of equity has such residual authority. *Id.* at 164, 373 *A.*2d 442. The ULPA grants to a limited partner

the same right as a general partner to seek dissolution of a partnership and the winding up of its affairs where appropriate. *N.J.S.A.* 42:2A–53; *see also N.J.S.A.* 42:2A–52. Moreover, *N.J.S.A.* 42:4–7, which specifically provides for the appointment of a receiver in connection with the dissolution of a partnership, contains nothing expressly limiting its reach to general, as opposed to limited partnerships. We thus conclude that appointment of a receiver is one of the weapons in the Chancery Division's arsenal that can be used to combat minority oppression.

We are satisfied that the Chancery Division properly exercised its authority in this case. *See First Nat'l State Bank of New Jersey v. Kron,* 190 *N.J.Super.* 510, 513, 464 *A.2d* 1146 (App.Div.), *certif. denied,* 95 *N.J.* 204, 470 *A.2d* 424 (1983). Where partners cannot agree upon a price or a purchaser for the sale of partnership assets, appointment of a receiver has been held to be an appropriate remedy. *See Fishman v. Raphael & Fishman,* 141 *N.J. Eq.* 576, 578–79, 58 *A.2d* 285 (Ch.Div.1948). While partners may purchase assets from the partnership, they may not force their co-partners into divesting their interests at an artificially low price. Carolyn had the right to insist that the highest offering price the market would bear should prevail. Although plaintiff and his mother held a majority interest in the partnership, they owed the minority partners the duty to sell the Montvale property at the highest price attainable. When Carolyn's interest was threatened, the Chancery Division properly intervened and ordered the appointment of a receiver.

### III.

Plaintiff's remaining arguments are without merit and do not require extended discussion. The Chancery Division did not commit error when it ignored the footnote contained in plaintiff's bid. It bears repeating that plaintiff and Ferolie had made a series of competing offers for the Montvale property. Although the Chancery Division suggested that a private auction could yield the highest purchase price for the property, none of the parties

accepted this proposal. Without objection, the Chancery Division ordered that sealed final bids be submitted. The court's intent was crystal clear and was reiterated several times. Specifically, each party interested in purchasing the property was to submit a final bid toward the end of facilitating an expeditious winding up of the partnership's affairs. Plaintiff's attempt to frustrate that process by providing in his bid a "formula" so that only he could win the contest was obviously unfair and in derogation of the court's prior order.

■ The Chancery Division also properly allowed Sony to sublease the building to Ferolie for the remainder of the lease term. The lease between Brookview and Sony permitted Sony to sublease the building with Brookview's consent, "which consent [could] not be unreasonably withheld." Plaintiff established no basis for denying consent.

Affirmed.